Hello, Your Honors. May it please the Court, my name is Jared Walker. On behalf of the Plaintiff-Appellant Steve Cargill, I'll do my best to reserve 60 seconds to my time. Your Honors, the briefing focused a lot on my client's argument that he met a listing at Step 3 of the agency's evaluation process. I'd like to fast forward and make sure I touch on the second argument regarding the medical opinions that weren't accepted by the administrative law judge in this case, because I think, if you will, it's low-hanging fruit. In particular, with respect to Dr. Lin, the treating pain management physician's opinion that, in one part, was given great weight by the ALJ, but with respect to a whole host of Dr. Lin's other opinions were rejected without really any explanation that I could gather from the unfavorable decision in this case. And so with respect to Dr. Lin's other opinions, I'd like to fast forward and make sure I touch on the second argument regarding the medical opinions that weren't accepted by the administrative law judge in this case, because I think, if you will, it's low-hanging fruit. And so with respect to Dr. Lin's other opinions were rejected without really any explanation that I could gather from the unfavorable decision in this case. And so with respect to Dr. Lin's other opinions were rejected without really any explanation  But, just working past cases, I think it's hard to say that it wouldn't. And so from a harmless error perspective, that opinion was never dealt with. It also comports with the treating podiatrist, Dr. Kislyakowski's, statement after the failed ankle surgery that Mr. Cargo would have to constantly elevate his foot. And so there's, on the substance, on the merits of that opinion It seemed like you in your brief didn't focus on errors related to Dr. Kislyakowski, or however we say his name. So is that really before us at this point? Well, and I'm not going forward focusing on any error with respect to Dr. Kislyakowski. And the reason is, is because there, the ALJ actually gave reasons. It makes my job, given the Court's scope of review in these cases, significantly more challenging to prevail when the ALJ has actually made findings and there's reasons that the Court has to defer to in most cases. But the only point I'm making with respect to Dr. K's opinion is that it bolsters Dr. Lin's, which wasn't dealt with. And, you know, there's also other components of Dr. Lin's opinions that I think raise great concern as to whether or not this Step 5 finding of sedentary jobs only that this man can theoretically perform, whether that finding is valid. And, you know, those other opinions that Dr. Lin set forth are that he can only walk one block at a time. He can stand in 10 to 15-minute increments and then again sit up to four hours per day, which would disqualify him from all work. Dr. Lin also talked about a need for breaks. And it seems like you're not pursuing that aspect of what he said as an error. Well, all of the opinions that Dr. Lin set forth, as well as the qualified medical examiner, Dr. Sandhu, that weren't expressly dealt with by the administrative law judge, we are contending that's error. That, you know, the law is very clear that the ALJ has to give specific legitimate reasons to cast aside any medical opinions. As to those two doctors, and in particular Dr. Lin, that wasn't done. So, you know, with respect to the opinions, that's the thrust of plaintiff's contention. It seems like the breaks and the days of absence that he might have, though, wasn't the focus of your brief. I don't know if that's because you thought it might be related to alcohol use or whether you just focused on other things. Well, I certainly wasn't trying to avoid it. You know, the alcohol use is, it's mentioned a number of times in different contexts in this ALJ opinion. I can't discern for what purpose. I can't. My review of the opinion, it's not clear to me what the significance of that, that he drinks beer and reports it to his treating doctors. Drinks a lot of beer. I mean, I think that's at least appeared to be to the ALJ a remarkable fact. It is true that he hammers that fact more than I might have. But the consumption is not insignificant. And the concern about the failure to disclose that and the effect it might have in connection with medication that's prescribed, I apologize for my voice, is not hard to infer. Well, and the failure to disclose it I don't think is supported on this record because the doctors repeatedly mention he reports drinking this number of beers. And the number of beers per week in the record, it's not consistent. Sometimes it's 6 to 12. There was one mention of it being like 30 to 60 a week. Or 6 to 12 a day. Right. And my major point as to the alcohol use is that if the ALJ meant to say that nothing Dr. Lynn, for instance, anything Dr. Lynn says must be cast aside because that's a reckless doctor prescribing narcotics, knowing that there's alcohol use, that point wasn't made by the agency. And, you know, so now to essentially rewrite post hoc the ALJ opinion on review, that's not supposed to happen. And I think that in order to draw that inference, which isn't expressed in the opinion, I think the court would have to engage in that post hoc rationale. Now, as far as the listing argument, that's essentially a plain text argument from my client's standpoint. And specifically, the ALJ denied at step three on the sole basis that my client requires one cane rather than two to walk. This listing doesn't require a two-handed assistive device in order to meet that listing. So say we agree with you that the ALJ got confused about how this listing worked. Do we ‑‑ does it matter? Because it seems like whether he could walk was an issue that was considered later when the doctor's evaluations were considered. Yes, Your Honor. And I think, you know, what the issue is is whether it's a harmless error at step three. On this record, my client submits it can't be deemed harmless given the description of the objective findings of this man's ankle and right leg impairment. I mean, you know, we're talking about Dr. Kislykowski's post-surgery descriptions of what this foot looks like is startling. And so, you know, what ‑‑ It's sort of like does it matter if we call that an error with respect to the listing or an error with respect to considering whether he can walk in the residual function? I think at step three, the ALJ's decision has to be evaluated on its own, whether the step three finding is devoid of legal error and is supported by substantial evidence. Regarding the issue of whether the error was harmless, I would submit that the residual functional capacity does have some relevancy and supports my client's contention that he meets the second requirement of the listing of inability to ambulate effectively. And specifically, the example that the listing gives, 1.00B, I believe, of examples of inability to ambulate effectively is can't climb stairs. The ALJ found that as part of the RFC finding. And so while there are two different issues, from a law of the case perspective, if he can't climb stairs and not being able to climb stairs is an example of meeting this listing, then I think that needs to be taken into account in the harmless error analysis. I've got 30 seconds left. We'll still give you a minute for rebuttal. Thank you. Thanks so much. Thank you. Good morning. Shea Bond on behalf of the Acting Commissioner of Social Security. I would just like to point out with the listings, it's a very high standard to meet, and this court acknowledged that in Kennedy. It's purposefully written to be a very high standard because it ends the analysis at step three. And here we just don't have the evidence to show that the claimant had the type of ineffective ambulation that's contemplated by that listing. But the ALJ made an error in analyzing that, right? I'm going to disagree. I think when you look at the ALJ's statement, he says that the claimant did not satisfy either listing because of the lack of inability to ambulate effectively, and then did highlight the use of the single-point cane. However, the ALJ's discussion and analysis of the evidence through the remainder of the decision provides the basis for the conclusion that there was a lack of an inability to ambulate effectively. And I would cite to this court's cases in Lewis, which we cited in our brief, and that case stands for the proposition that even if the analysis under the direct heading of the finding of the listing is kind of skimpy, as long as you can look at the rest of the decision and determine that the ALJ, you know, give you a thorough evaluation of the record evidence as a whole, that provides the support for the prior conclusion. And another one of the... Is that even when the explanation given for the prior conclusion is wrong legally? But in what respects? I would say... But it seems, I mean, maybe it's a matter of interpretation, but it seems like the ALJ thought that he automatically didn't meet the listing because he only used a single-point cane, and that isn't right. Well, I think that's an example that the ALJ provided at that point, that it was the single-point cane, but the sentence before says that the claimant has the ability or has not proven the inability to ambulate effectively. So the ALJ then correctly states that the claimant is only using a single-point cane, does not provide a further analysis at this point, but then discusses the evidence later on in the decision. And I think what's lacking here is that the claimant has not identified the type of evidence that would support an inability to ambulate effectively that would be listing level. So, for example, in the plaintiff's brief, he said, I'm limited to two hours of standing and walking. I think we all know that that limitation is not consistent with an inability to ambulate because that's consistent with sedentary work. And then, of course, use of the single-point cane, he also challenged, but what makes ambulation ineffective is that your upper extremities are limited to an extent you can't carry out the other job duties, say, for sedentary work. And then he identifies that a claimant… But that might be true. I mean, if he needs to carry a box or something, but he has to use the one cane, he may not be able to do. Well, but the vocational expert… So when you have those types of limitations, that's when you present those limitations to a vocational expert to determine whether, you know, how much of the job base or the occupational base has been impacted. And so that limitation of using a single-point cane was presented to the vocational expert who then identified three occupations which would accommodate that. So we do have the answer to that question. And I would also point out that in terms of climbing, I do not believe that a limitation to no climbing establishes the type of extreme ambulation or inability to ambulate effectively contemplated by the listing. And that's also borne out by the fact that the vocational expert identified three occupations, and none of those occupations require any kind of climbing whatsoever. So the assumption that a limitation against kind of climbing in general equates to an inability to ambulate effectively does not make sense in terms of… In terms of sitting, because it seems like we have the issue of whether you can walk, but we also have the issue of whether you can sit as long as the ALJ assumed. Correct. And it seems like there was a disregard of Dr. Lin, the treating physician's opinion on that, for reasons I have really a hard time understanding. Can you address that? Yes, Your Honor. So Dr. Lin did assess the four hours of standing and walking. I'm sorry, sitting. Sitting. And so the ALJ acknowledged that on page 33 of the administrative record. And then going on to page 34 of the administrative record, discusses in concert the opinions of Drs. Lin, Reyna, and Wang. And so those were the three providers who were all within the same group that treated the claimant. And our position is that under the case here, Magalanes from this court, that when the ALJ is discussing opinions in concert, you can read the analysis as a whole. And so the ALJ isn't necessarily required to state, I reject, I think the language in Magalanes was, I reject Dr. Fox's opinion on this limitation because XXX. So long as the ALJ has shown that he or she has considered that limitation in connection with another doctor's opinion. And so we have that here. So you're saying a lot of things about these other colleagues, but I still don't understand why the ALJ rejected the four-hour limitation on sitting. So if you go and you look in the discussion of Dr. Reyna and Dr. Wang, the ALJ acknowledges that those doctors had said that the claimant could not perform any prolonged sitting. And that's both for Wang and Dr. Reyna. And then a couple of paragraphs down, he says it appears that Dr. Wang's colleagues simply followed Dr. Wang's opinion without making independent examinations of the claimant. So I submit that that is. But that still brings us back to the fact that, I don't understand how that tells us it was wrong that he could only sit for four hours. Well, because. You didn't get the end of your statement. Could you? I'm sorry? The end of your sentence, you didn't tell me, I didn't hear that. Oh, I was going to say that he, the ALJ is analyzing Dr. Lin's opinion in connection with Dr. Wang's opinion and then draws the conclusion that he's not adopting those types of, say, sitting limitations. And it's because there were normal findings upon examination of the claimant's ankle. Okay. Thank you. So. But how does normal examination of the ankle necessarily address the sitting? Well, I think because claimant was saying that he, again, you're also asking about the leg elevation while sitting. And so that would be a limitation. It's all the limitations, I would say, together. The claimant is alleging that it's the ankle pain that's causing him his problems. And so what is it about this condition that is limiting to four hours of sitting? It's not explained. And if the claimant is alleging these problems are stemming from his ankle impairment, the ALJ is pointing out that the majority of the clinical examinations were unremarkable of the ankle in terms of limitations. What is the comment the ALJ was talking about not considering giving full credit to Dr. Lynn because it has failed to mention the claimant's alcohol consumption? The relevance? Yes. So the ALJ here is pointing out that because Dr. Lynn did not understand that the treatment of the claimant. And so I would say it also impacts his understanding of the claimant's totality of his condition. And so that's the piece that I've paused on because, I mean, I understand the connection that the doctor apparently doesn't know some things, but I'm not sure how that explains, for example, the four-hour sitting limitation. How would that change if he'd known about alcohol consumption? Well, I think it would change his lens of what is caused. Why would the claimant need or be unable to sit or stand or do any of these things? If the claimant is drinking excessively, it could impact his functionality. So instead of attributing, Dr. Lynn is attributing the Dr. Lynn doesn't know about the drinking, he's not going to attribute the inability to sit to the alcohol. He doesn't know about that. He apparently came up with this diagnosis based on what he understood about other aspects of the petitioner's condition. And I agree, but if the petitioner is only talking about the ankle condition. But he's not. I think Dr. Lynn talked about degenerative disc disease at L3-4, L4-5. I don't know what all these things are, but arteriolysis and mild slippage of the vertebra. That doesn't sound like it's about the ankle. It's an orthopedic impairment. So I would say that if the claimant is not being accurate about his alcohol consumption and the doctors are focusing simply on his orthopedic complaints, there could be a discrepancy there where the doctor is now attributing the symptoms to a condition that really he should be examining the alcohol usage. So slippage in the discs is caused by alcohol use? It's not the cause. It's whatever symptoms. So if he's saying he's lethargic during the day, or he can't stand and walk, or he's sitting on the couch all day long, it could be attributable to the fact that he's been drinking, not because he's in pain from his orthopedic conditions to the extent that Dr. Lynn is opining here. It's that it deprived Dr. Lynn of the opportunity to really give a full understanding of the claimant's overall medical condition and what the symptoms could be related to. So in that respect, we would say that the ALJ may be a proper analysis here based on the record that was before him. Unless there are other questions. I had a question about how the ALJ could give Dr. Talcherker's opinion so much weight when it seems like aspects of Dr. Talcherker's opinion were totally not credible in that he thought he could climb stairs and ladders and stoop and crawl and crouch, and that was clearly wrong. And the ALJ did not include those types of limitations? Right. The ALJ took out that part but then took the rest. And how do we trust this doctor at all when most of what he's saying is totally wrong? Well, I mean, an ALJ is entitled to accept portions of an opinion that he feels is supported by the record and then discount those that are not. And I don't know if that's Megalanes or the Morgan case. I can't remember. But an ALJ doesn't necessarily have to agree with everything that's in a medical opinion and can find or adopt those limitations that have the record support and then reject those that don't. And so obviously the ALJ was giving the claimant's statements a little bit more credibility there because he limited the claimant to less than sedentary work, which, of course, was a less amount of functionality than what the DDS doctor had opined. So it was to the claimant's benefit. Okay. Thank you, counsel. You're out of time. Thank you, Your Honors. Briefly, regarding the evidence of the medical evidence of my client's inability to walk effectively, page 6 of plaintiff's opening brief would go down a litany of evidence in the record describing this man's foot both before and after surgery. After surgery, it gets even worse. And so I would urge the Court to scrutinize the evidence itself, as well as the idea that this is just an ankle impairment. It's not. Dr. Lin's treatment also focused on the lumbar spine. The last radiology at the end of 2013 showed extensive disc herniations. And on the same date that Dr. Lin issued his opinion, November 22, 2013, Dr. Lin made objective clinical findings of the lumbar spine of decreased range of motion, positive straight leg raise testing, and antalgic gait just doesn't visually walk right, and diagnosed lumbar radiculopathy, meaning the pain's radiating down his leg, both legs, in addition to the ankle impairment. So I would submit that the medical evidence, both on Step 3 and to support the doctor's opinions that were cast aside, is strong. Thank you, counsel. We've taken you over your time. Thank you, both sides, for the arguments. The case is submitted. The next case on calendar is White v. California, 17-17143. Each side will have 15 minutes in this case.
judges: Wallace, Clifton, Friedland